## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALBERT JUAN ORTIZ,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 3:CV-08-2126** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **PRISON BOARD MEMBERS,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Albert Juan Ortiz ("Ortiz"), an inmate presently confined at the State Correctional Institution, Graterford, Pennsylvania ("SCI-Graterford"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In a memorandum and order dated October 7, 2009, Judge Vanaskie of this court dismissed the claims against Defendants Dauphin County Prison, City of Harrisburg, and Mayor Reed. (Doc. 12.)

By order dated June 22, 2010, Judge Vanaskie granted Plaintiff's motion requesting leave to file an amended complaint and accepted his proposed amended complaint. (Doc. 33-3.) This matter was subsequently reassigned to the undersigned on June 30, 2010. In a memorandum and order dated December 21, 2010, the court denied Defendant Lisa Reitz's motion to dismiss the amended complaint. (Doc. 42.)

Presently pending is a motion to dismiss the amended complaint filed by Defendants Warden Dominick DeRose, Captain Lahr, and Deputy Warden Nichols

("moving Defendants"), all of whom are employees of the Dauphin County Prison. (Doc. 37.)   The motion is ripe for consideration.

## I.  **Background**

This matter involves events that purportedly transpired during Ortiz's prior confinement as a pretrial detainee at the Dauphin County Prison, Harrisburg, Pennsylvania.  Ortiz alleges that he was deprived medications previously prescribed for high blood pressure and a heart condition, and was also deprived of an adequate diet over a 138-day period during a prolonged institutional lockdown.[1]  (Doc. 33-3, ¶¶ 22-23.)  Purportedly as a result of those deprivations, Plaintiff claims he fainted.  Ortiz also alleges that he was subjected to unconstitutional conditions of confinement during the lockdown.  Specifically, he asserts that several days into the lock-down, correctional staff, acting under orders from Defendants DeRose, Nichols, and Lahr, conducted a shakedown search of his cell.  During this search, correctional staff purportedly destroyed his personal property, including legal documents relating to his pending state criminal prosecution.  (*Id*. at ¶ 17.)   As a result, Plaintiff claims his ability to participate in the defense of his pending criminal prosecution was impaired.

---

[1]  Plaintiff indicates that the lock down followed a May, 2008 altercation between two inmates within his cell block.  (Doc. 33-3 at ¶ 16.)  He indicates that the lockdown was an excessive response to the altercation.

In addition, Ortiz claims his personal hygiene products were destroyed and he was denied access to towels, sheets, and blankets "while the air conditioning was blasting." (*Id*. at ¶ 20.) It is further asserted that all water service to Ortiz's cell block was shut off for a five-day period which prevented toilets from being flushed resulting in a stench. The amended complaint's remaining contention with respect to the moving Defendants is that Plaintiff was fed bologna sandwiches three times per day for 138 days. (*Id*. at ¶ 23.)

In short, Plaintiff asserts that the moving Defendants' conduct during the lockdown violated his constitutional right of access to the courts, and constituted cruel and unusual punishment as well as deliberate indifference to his medical needs as contemplated under the Eighth Amendment. Plaintiff seeks injunctive and declaratory relief along with compensatory and punitive damages.

## II.   **Standard of Review for Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489

F.3d 170, 177 (3d Cir. 2007)(quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  *See* Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __ ,129 S.Ct 1937, 1949 (2009).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  *Twombly*, 550 U.S. at 556.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Id*. at 562.

A civil rights complaint should allege the conduct violating plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S.Ct at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible

4

claim for relief. *See id.* at 1950; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). It is additionally noted that *pro se* pleadings are to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Additionally, because Plaintiff describes himself as being a pretrial detainee, his conditions of confinement claims must be considered under the due process clause of the Fourteenth Amendment as opposed to the Eighth Amendment, which is the applicable standard for incarcerated persons. *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005). As noted in *Hubbard*, the appropriate inquiry to use in a condition of confinement claim by a pretrial detainee is "whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law." *Id.*

## III.    Damages in Sum Certain

The moving Defendants' pending motion correctly notes that the amended complaint in part "seeks various specific amounts of compensation." (Doc. 38 at 13.) They contend that Plaintiff's demand for specific sums of money damages should be stricken pursuant to Local Rule 8.1.

Pursuant to the Local Rules of this court, a prayer for relief which seeks a specific amount of damages must be stricken. *See* M.D. Pa. Local Rule 8.1(a demand for judgment "shall not claim any specific sum where unliquidated damages are

involved"). Based upon this provision in Local Rule 8.1, the court will strike the amended complaint to the extent that it seeks specific sums of money damages.

## IV.   <u>Access to the Courts</u>

The amended complaint asserts that during the shakedown search of his cell, Plaintiff's personal legal documents including letters from his criminal defense attorney were confiscated. (Doc. 33-3 at ¶ 19.) It is also vaguely alleged that his legal mail was withheld. (*See id.* at ¶ 28.) Moving Defendants' argue in their motion that Ortiz has failed to state a claim of denial of access to the courts because he has not "alleged any injury as a result of the purported actions regarding his legal mail." (Doc. 38 at 7.) Ortiz responds in his brief in opposition to Defendants' motion that during the pendency of this litigation, he was also facing criminal prosecution in Dauphin County. (Doc. 41.) He admits that a criminal defense attorney was appointed to represent him in the criminal proceedings. (*Id.* at 9.) He asserts that during the 138-day lockdown, he was denied access to his attorney and he was also prohibited from visiting the prison law library. (*Id.*) Ortiz also contends that due to the confiscation of his legal documents and inability to communicate with his legal counsel (presumably referring to the alleged taking of letters sent to him from counsel) he was unable to "research the charges and prepare himself for trial." (*Id.*)

Plaintiff states that he had no alternative but to enter a guilty plea "once he went to court in January of the following year." (*Id.*)

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Inmates have a constitutional right to meaningful access to law libraries, legal materials or legal services. *Bounds v. Smith*, 430 U.S. 817, 821-25 (1977). The United States Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under *Bounds*, must allege an actual injury to his litigation efforts. The Court explained that a prisoner must demonstrate that a non-frivolous legal claim "had been frustrated or was being impeded." *Id*. at 353.

Before addressing the parties' other arguments, the court first notes that Ortiz's allegation regarding denial of access to the prison law library was not raised in the amended complaint and therefore is not properly before this court.

The court finds that Plaintiff has not satisfied his burden under *Lewis* of establishing that he suffered any actual injury with respect to the alleged confiscation and destruction of his personal legal property for several reasons. First, as noted above, the amended complaint acknowledges that during the pendency of this litigation, Plaintiff was represented by counsel in the ongoing state criminal prosecution. Furthermore, there are no contentions that the alleged deprivation of his personal legal property or Ortiz's inability to communicate with counsel caused him to miss any deadline relating to his criminal prosecution. More importantly, Plaintiff has failed to set forth a single specific instance showing how the alleged confiscation of his legal documents and legal mail interfered with his ability to pursue a criminal defense. Moreover, Plaintiff states that the 138-day lockdown began in May, 2008, and he acknowledges that he did not go to court on his pending criminal charges until January of the following year, well after Plaintiff was subjected to the lockdown related restrictions. Accordingly, the motion to dismiss will be granted with respect to this claim.

## V.    <u>First Amendment</u>

As previously discussed, Plaintiff generally alleges that his personal legal mail was withheld during the lockdown. (Doc. 33-3 at ¶ 28.) Moving Defendants contend

that to the extent that this allegation can be "construed as attempting to set forth a violation of Plaintiff's First Amendment rights, any such claim must be dismissed."[2] (Doc. 38 at 11.)  They correctly note that in *Taylor v. Oney*, 196 Fed. Appx. 126, 128 (3d Cir. 2006), the Third Circuit Court of Appeals stated that the opening of incoming legal mail outside of a prisoner's presence impinges upon the inmate's First Amendment rights.  However, they argue that the amended complaint fails to assert that they were personally involved in a pattern and practice of opening Oritz's incoming mail outside of his presence as required under *Taylo*r.  Plaintiff's response in opposition to the motion does not address this argument.

In  *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006), the Third Circuit Court of Appeals reiterated that prisoners have a First  Amendment right with respect to their legal mail and that "a state pattern and practice, or . . . explicit policy of opening legal mail outside the presence of the addressee inmate interferes with protected communications . . . and accordingly impinges upon the inmate's right to freedom of speech."  The Court added that a prisoner litigant pursuing such a claim is not required to allege actual injury.  *See id.*

---

[2] A review of the amended complaint contains no indication that Plaintiff is attempting to assert a First Amendment claim.  Rather, he describes this claim as raising a denial of access to the courts claim.

The amended complaint contains no indication that Plaintiff is pursuing a First Amendment claim. Moreover, there is no assertion by Ortiz that his incoming mail was opened outside of his presence pursuant to any pattern, practice or policy. Rather, Ortiz only generally avers that his legal mail was withheld. Based on those factors, as well as Plaintiff's failure to oppose the moving Defendants' pending argument, the court finds that the amended complaint failed to set forth a viable First Amendment claim.

## VI.  **Negligence**

Moving Defendants next assert that any claims of negligent conduct raised against them, including negligent supervision over other Dauphin County Prison employees, are insufficient for purposes of setting forth a viable § 1983 claim. (Doc. 38 at 7.) Ortiz failed to address this argument in his response.

The court agrees with the moving Defendants that Plaintiff's § 1983 negligence claim should be dismissed. It is well-settled that claims that sound in negligence do not expose a defendant to liability under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Simply put, allegations of negligence "do not trigger constitutional protections." *Whooten v. Bussanich*, 248 Fed. Appx. 324, 326 (3d Cir. 2007)(citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Accordingly, the moving

Defendants' unopposed argument for dismissal will be granted to the extent that Ortiz's amended complaint is attempting to pursue a § 1983 negligence claim.[3]

## VII.  Medical Treatment

As previously discussed, the amended complaint contends that during a 138-day lockdown and while confined as a pretrial detainee, Plaintiff was deprived of previously prescribed heart and blood pressure medication to such an extent that the deprivation, when coupled with the inadequate diet being served, caused him to faint. (Doc. 39 at ¶ 3.)

Moving Defendants maintain that the alleged deprivation of medication did not violate Plaintiff's constitutional rights because his condition was not of such a serious nature "that failure to treat can be expected to lead to injury or death." (Doc. 38 at 10.)  They alternatively argue that they cannot be held liable for any failure to treat by PrimeCare, which was contracted to provide medical care to the Dauphin County

---

[3]  It is noted that the amended complaint indicates that Plaintiff wishes to pursue pendent state law claims.  (Doc. 33-3 at ¶ 2.)  Although a claim of negligence cannot be pursued under § 1983, the court may entertain a pendent state law claim of negligence.

Prison inmates and which employed the only medical defendant, non-moving Defendant Nurse Reitz.[4]

In his response, Ortiz reiterates that prior to the lock down, prison officials provided him with medications for his high blood pressure and heart condition which were prescribed prior to his arrest. (Doc. 41 at 2.) He argues that the lockdown was the sole reason for the discontinuance of his medications. As a direct result of being denied his needed medication, Ortiz claims that his blood pressure became "immensely high" eventually causing him to pass out. (*Id*. at 3.) For the reasons set forth below, the court will dismiss this claim as to the moving Defendants.

Although Ortiz was a pretrial detainee, the Third Circuit Court of Appeals has indicated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976),[5]

---

[4] Defendant Reitz is described as being a nurse employed by PrimeCare whose duties at the Dauphin County Prison included the distribution of medication to the prison population. (Doc. 41 at 7.)

[5] Pursuant to the Supreme Court's decision in *Estelle*, an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." *Id.* at 104 (citation omitted).

which provides that prison officials are required "to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)); *see also Watkins v. Cape May Cnty. Corr. Ctr.*, 240 Fed. Appx. 985, 986 (3d Cir. 2007). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill*, 372 F.3d at 235-36; *Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 582 (3d Cir. 2003). Thus, the relevant inquiry is whether the defendant was (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mines v. Levi*, 2009 WL 839011, at *7 (E.D. Pa. March 26, 2009)(quoting *Colburn*, 946 F.2d at 1023); *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical

need is of the serious nature contemplated by the Eighth Amendment." *Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 347).

Ortiz contends in his amended complaint that he was diagnosed as having high blood pressure and a cardiac condition that required prescribed medications. He further contends that the deprivation of those medications caused him to faint. Based on these contentions, the court finds that the requirements set forth in *Mines* and *Young* are satisfied and the amended complaint has sufficiently alleged that Ortiz suffers from a serious medical need.

However, the Court of Appeals for the Third Circuit has held that a non-physician defendant can not be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.[6] *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Nevertheless, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. *Id*.;

---

[6] Although Nurse Reitz is employed by PrimeCare, a private contractor, she can nonetheless be considered as being a member of the prison's medical staff for the purpose of this discussion.

*Ordonez v. Yost*, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons").

The moving Defendants are identified as being the Warden, the Deputy Warden and the Captain. There is no assertion or indication that any of them have any medical expertise, were employed in a health care-related position or had any involvement whatsoever in Ortiz's medical care. Hence, the only basis for a medical deliberate indifference claim against these non-medical defendants is an assertion that they intentionally denied or delayed Plaintiff's prescribed medical care. However, such a claim is undermined by Ortiz in his brief opposing moving Defendant's motion to dismiss wherein he plainly states that Nurse Reitz, not the moving Defendants, "intentionally refused to provide Plaintiff with the medication that was prescribed to him." (Doc. 41 at 7.) He added that Nurse Reitz "took it up herself to stop the medication." (*Id.*) Accordingly, Plaintiff's admissions that it was Nurse Reitz who was solely responsible for the purported lack of medical treatment during the lockdown warrants dismissal of Plaintiff's claim of deliberate indifference to a serious medical need as to the moving Defendants because he was already receiving treatment by an individual other than moving Defendants.

## VIII.  Conditions of Confinement

Ortiz claims in his amended complaint that a few days into the lockdown, correctional staff, acting pursuant to orders issued by Defendants DeRose, Nichols, and Lahr, conducted a shakedown search of his entire cellblock.  (Doc. 33-3 at ¶17.)  During this shakedown, unidentified officers entered his cell "and destroyed everything on sight." (*Id.* at ¶ 18.)  As a result, Ortiz was deprived of toothpaste, toothbrush, underwear, long johns, socks, soap, deodorant, towels, sheets and blankets.  He additionally claims that the air conditioning was intentionally turned on during the period when he was deprived of his bedding.  (*Id.* at ¶ 27.)  Ortiz also asserts that water was shut off to his cell for a five-day period creating a stench from the inability to flush the toilet and also that he was fed bologna sandwiches three times per day for 138 days.   Ortiz indicates that at least one of the alleged deprivations, the lack of running water, was temporary in nature, lasting only 5 days.  (Doc. 33-3 at ¶ 20.)   However, he also claims that at least one of the remaining deprivations, being fed only bologna sandwiches, persisted throughout the entire 138-day lockdown. (*Id.* at ¶ 23.)

Moving Defendants generally argue that those alleged conditions were not "atypical and significant" as contemplated in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d

Cir. 1997), because the same conditions were imposed on the other prisoners housed in Ortiz's cellblock and that the deprivations "even if proven to be true, are not sufficiently significant and severe to permit recovery." (Doc. 38 at 6.)

As previously mentioned, the Third Circuit Court of Appeals held that "pretrial detainees are entitled to greater protection than that provided by the Eighth Amendment." *Hubbard,* 399 F.3d at 167, n. 23. Accordingly, the court must use a different standard when evaluating non-medical conditions of confinement claims for pretrial detainees as opposed to incarcerated persons. *See Tapp v. Proto*, 718 F. Supp. 2d 598, 617 (E.D. Pa. 2010). In *Tapp*, the court explained "although this area of the law has not been well-examined, . . . the Fourteenth Amendment provides some measure of additional protections for pretrial detainees above what the Eighth Amendment provides." *Id.* Nonetheless, the Eighth Amendment protections "establish a floor of sorts" when evaluating conditions of confinement claims by a pretrial detainee. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000).

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994)*; Helling v. McKinney*, 509 U.S. 25, 31 (1993).

17

Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 418 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. *Hinterlong v. Hill,* 2006 WL 2303106, at * 5-6 (E.D. Pa. Aug. 8, 2006); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in *Wilson v. Seiter*:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

501 U.S. 294, 304-05 (1991).

18

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id.* at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known, objectively serious risk to a prisoner's health or safety. *See Farmer*, 511 U.S. at 837*; Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The mere fact that other inmates were also subjected to the same deprivations as Plaintiff by itself does not warrant a conclusion that the conditions alleged were constitutionally acceptable. Given the totality and duration of Plaintiff's assertions, including his claim of being intentionally deprived of basic necessities and his recognition that a pretrial detainee is entitled to greater protection under the Eighth Amendment than that afforded to incarcerated persons, the court is satisfied that Ortiz's amended complaint has set forth a claim for alleged violations of his Fourteenth Amendment rights sufficient to withstand scrutiny under Rule 12(b)(6). The motion to dismiss will therefore be denied with regard to Plaintiff's allegations

that moving Defendants intentionally subjected him to unconstitutional conditions of confinement during the course of the lockdown.

An appropriate order will be issued.

                        s/Sylvia H. Rambo          
                          United States District Judge

Dated:  February 28, 2011.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALBERT JUAN ORTIZ,     :
            :
   **Plaintiff**     :  **CIVIL NO. 3:CV-08-2126**
            :
 **v.**         :  **(Judge Rambo)**
            :
PRISON BOARD MEMBERS, *et al.,* :
            :
   **Defendants**    :

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.  Defendants Warden Dominick DeRose, Captain Lahr, and Deputy Warden

Nichols' motion to dismiss (Doc. 37) the amended complaint is **GRANTED IN**

**PART** as follows:

  a.  Dismissal is **GRANTED** in favor of Defendants Dominick DeRose,

Lahr, and Nichols with respect to Plaintiff's claims of: (1) denial of access to

the courts; (2) negligence under § 1983; (3) deliberate indifference to his

medical needs; and (4) violation of the First Amendment.

1

b.   The motion to dismiss is **DENIED** with respect to the claim that the

moving Defendants subjected Plaintiff to unconstitutional conditions of

confinement during the course of an institutional lockdown.

2.   Pursuant to M.D. Pa. Local Rule 8.1, the demand for relief in the *pro se*

amended complaint, to the extent that it seeks  specific sums of money damages, is

hereby **STRICKEN**.


       s/Sylvia H. Rambo
       United States District Judge

Dated:  February 28, 2011.

2