# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALBERT JUAN ORTIZ,** | : |
| **Plaintiff** | : CIVIL NO. 3:CV-08-2126 |
| v. | : (Judge Rambo) |
| **PRISON BOARD MEMBERS,** *et al.,* | : |
| **Defendants** | : |

# M E M O R A N D U M

This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Plaintiff Albert Juan Ortiz ("Ortiz"), an inmate presently confined at the State Correctional Institution, Graterford, Pennsylvania ("SCI-Graterford"). Remaining Defendants are Warden Dominick DeRose, Captain Lahr, Deputy Warden Nichols, and Lisa Reitz, R.N., all of whom were employed at the Dauphin County Prison.[1]

## I. Background

### A. Facts

This matter regards events which purportedly transpired during Plaintiff's prior confinement as a pre-trial detainee at the Dauphin County Prison, Harrisburg, Pennsylvania. With respect to Moving Defendant Reitz, the amended complaint

---

[1] By memorandum and order dated October 7, 2009, Judge Vanaskie dismissed the claims against Defendants Dauphin County Prison, City of Harrisburg, and Mayor Reed.

contends that prior to being taken into custody, Plaintiff was prescribed high blood pressure and heart medication. During a 138 day period of time (approximately May-August, 2008) when the prison was in a prolonged lockdown, Ortiz contends that he was denied those medications, an adequate diet,[2] as well as other treatment.[3] (Doc. 33-3, ¶¶ 22-23.) As a result of those purported deprivations, Plaintiff allegedly fainted.

The amended complaint concludes that Defendant Reitz's conduct during the lockdown constituted deliberate indifference to his medical needs as contemplated under the Eighth Amendment. Ortiz seeks injunctive and declaratory relief along with compensatory and punitive damages.

### B.   Procedural History

On June 22, 2010, Plaintiff filed an Amended Complaint.[4] (Doc. 33-3.) This matter was subsequently reassigned to the undersigned on June 30, 2010. On

---

[2]   Ortiz indicates that although he had been placed on a low salt diet he was fed bologna sandwiches three times per day for 138 days (Doc. 33-3, ¶ 23.)

[3]   Plaintiff indicates that the lock down followed a May, 2008 altercation between two inmates within his cell block. (*Id.* at ¶ 16.)

[4]   At the time of this filing, the case was before the Honorable Thomas I. Vanaskie.

December 21, 2010, the court issued a memorandum and order which denied Defendant Lisa Reitz's motion to dismiss the Amended Complaint.[5] (Doc. 42.)

By memorandum and order dated February 28, 2011, a motion to dismiss the Amended Complaint filed by Defendants Dominick DeRose, Lahr, and Nichols was partially granted. (Doc. 51.) Dismissal was granted with respect to Plaintiff's claims of: (1) denial of access to the courts; (2) negligence under § 1983; (3) deliberate indifference to Plaintiff's serious medical needs; and (4) violation of the First Amendment. However, the motion to dismiss was denied regarding the claim that those Defendants subjected Plaintiff to unconstitutional conditions of confinement during the course of an institutional lockdown.

Presently pending is Defendant Reitz's motion for summary judgment. (Doc. 37.) The unopposed motion is ripe for consideration.

## III. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).

---

[5] Reitz sought dismissal on the basis of non-exhaustion of administrative remedies and in the alternative on the grounds that a viable constitutional claim was not stated.

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.,* 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  *Celotex,* 477 U.S. at 322-23.  "'Such affirmative

4

evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

It is undisputed that Plaintiff was a pre-trial detainee during the relevant time period, as such his claims must be considered under the due process clause of the Fourteenth Amendment as opposed to the Eighth Amendment, which is the applicable standard for incarcerated persons. *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005).

## IV. **Exhaustion of Administrative Remedies**

Defendant Reitz asserts in part that she is entitled to entry of summary judgment because "Plaintiff's Complaint fails to demonstrate any allegations that he exhausted his administrative remedies prior to filing this suit." (Doc. 60 at 14.)[6]

It is initially noted that a motion to dismiss previously filed by Defendant Reitz in this matter included a similar non-exhaustion argument. In addressing that

---

[6] Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

5

argument, the court's December 21, 2010 memorandum and order noted that an inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).   In addition, the court stated that pursuant to the standards announced in *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[7]  (Doc. 42 at 7.)

The court agrees with Defendant Reitz's observation that the amended complaint is silent with respect to the issue of exhaustion of administrative remedies. However, as previously discussed by the court's December 21, 2010 memorandum and order, under the decisions rendered in *Jones* and *Williams*, the failure of Ortiz's amended complaint to allege or establish compliance with the exhaustion requirement is not by itself a sufficient basis for entry of summary judgment. Rather, it is Defendant Reitz who bears the burden of demonstrating non-exhaustion. The pending summary judgment simply raises the same bald non-exhaustion argument which was previously set forth in the unsuccessful motion to dismiss. Moreover, none of the

---

[7] In *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

6

deficiencies outlined by the court's December 21, 2010 memorandum and order with respect to said non-exhaustion argument are addressed by Reitz's summary judgment request.

Since Defendant Reitz has again failed to establish that the Dauphin County Prison provided its inmates with an administrative grievance procedure which the Plaintiff failed to complete prior to filing suit in federal court, she has once again not satisfied her burden of establishing non-exhaustion. *See Wilson v. Corr. Med. Services*, 2010 WL 2521717 *2 n. 2 (D.N.J. June 14, 2010). Accordingly, Nurse Reitz's pending request for summary judgment on the basis of non-exhaustion will be denied.

## V.   **Medical Treatment**

The amended complaint describes Nurse Reitz as being responsible for dispensing properly prescribed medication at the Dauphin County Prison . (Doc. 33-3, ¶ 8.) It is undisputed that Nurse Reitz was employed by PrimeCare, which was contracted to provide medical care to the Dauphin County Prison inmate population. The parties also agree that prior to his incarceration Ortiz was prescribed medication for high blood pressure and a heart condition. Following his arrival at the prison as a pre-trial detainee, Plaintiff continued to receive those medications. There is also no

7

dispute that a lockdown of Plaintiff's housing unit was implemented following a May, 2008 inmate altercation.

Plaintiff's amended complaint alleges that "beginning on June 16, 2008" the Defendants refused to bring him his medication because his housing unit was in lockdown. (*Id*. at ¶ 12.) This purported deprivation of previously prescribed heart and high blood pressure medication continued for a 138 day period. As a direct result of being denied his needed medication, Ortiz claims that his blood pressure became elevated and, when coupled with the inadequate diet being served during the lockdown, eventually caused him to faint.

Defendant Reitz seeks summary judgment on the basis that Plaintiff has not presented any evidence to establish that she "was in any way involved in an alleged deprivation of medication during the lockdown." (Doc. 60 at 14.) Defendant Reitz adds that the undisputed facts establish that there was no deliberate indifference to Ortiz's medical needs during the relevant time period. As previously noted, Reitz's summary judgment motion is unopposed.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.

8

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Claims brought under § 1983 cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

The Third Circuit Court of Appeals has recognized that a pretrial detainee's right to adequate medical care should be analyzed under the criteria established in *Estelle v. Gamble*, 429 U.S. 97 (1976).[8] *See Watkins v. Cape May Cnty. Corr. Ctr.*,

---

[8] Pursuant to the Supreme Court's decision in *Estelle*, an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." *Id.* at 104 (citation omitted).

240 F. App'x 985, 986 (3d Cir. 2007).  Prison officials are required "to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  An inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need in order to establish an Eighth Amendment violation.  *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  Specifically, it must be shown that a defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1979).  Deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.  *Ordonez v. Yost*, 289 Fed. Appx. 553, 555 (3d Cir. 2008).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Mines v. Levi*, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009); *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 347.  There is no argument by Defendant Reitz that Plaintiff has failed to satisfy the serious medical need requirement.  Since it is undisputed that Ortiz was diagnosed as having high blood pressure and a cardiac condition which required him to be placed on prescribed

10

medication, this Court is satisfied that the amended complaint has sufficiently alleged that Ortiz suffered from a serious medical need during the relevant time period. *See Young v. Kazmerski*, 266 F. App'x. 191, 193 (3d Cir. 2008).

With respect to the subjective deliberate indifference component, the undisputed institutional medical records submitted by Defendant Reitz establishes that Ortiz was provided with regular medical attention during the relevant period of his Dauphin County confinement. The Plaintiff has not come forward with any medical or scientific evidence to counter the submitted medical records, accordingly, the content of those records will be considered unopposed. *See* Fed. R. Civ. P. 56(e).

According to the submitted medical records, Ortiz was given a health assessment by the correctional medical staff on March 22, 2008, shortly after his arrival at the prison. It was noted that Plaintiff was a cigarette smoker with a history of high blood pressure and cardiac issues. After blood testing, confirmation that he was taking prescribed medication prior to his confinement, and a March 24, 2008 consultation with a physician in the prison's cardiac care clinic the Plaintiff's previously prescribed medications (Lopressor, Lasix, and Vasotec) were continued and a low salt diet was also ordered.

Nurse Reitz was one of multiple prison nurses who handed out medication to the prison's inmate population. The institutional medical records next provide that

11

Plaintiff received "every dose" of his prescribed medications during the month of May, 2008. (Doc. 59, Exhibit B at 42.) Those records also establish that Ortiz received his prescribed medications on a regular basis throughout June, July, and August of 2008, the time frame of the lockdown. (*Id*. at 36-40.)

The institutional medical records further show that Plaintiff received additional medical care during the period of the lockdown. For instance, on June 2, 2008, Ortiz received treatment for a rash. (*Id*. at Ex. B, p. 21.) He received additional care for that problem on June 9, 12 and 16, 2008. (*Id*. at 18- 20.)

Thereafter, on June 17, 2008, Plaintiff was treated for complaints of dizziness. Blood sugar and blood pressure testing were performed with normal results and there were no signs of any diabetic problems. (*Id*. at 16.) Nonetheless, Ortiz's blood sugar was monitored for the next five (5) days. Moreover, between May — August 2008, Ortiz submitted thirteen (13) sick call slips, none of which asserted complaints relating to his present allegations of having suffered cardiac problems, dizziness, nausea or failure to receive medication. Medical assessments were conducted in response to those requests. He was also seen by a doctor in the prison's cardiac care clinic on June 28, 2008 and August 28, 2008.

Plaintiff's deposition testimony bolsters a determination that a deliberate indifference claim has not been stated against Reitz. Ortiz testified that he believed

12

that Nurse Reitz was in charge of medication at the prison and admitted that different nurses handed out medications to the inmate population. (Doc. 59-1 at 6, p. 16-17.) The Plaintiff acknowledged that he was not sure of the date when the lockdown began or when he stopped receiving his medication. (*Id*. at 9, p. 27.) He also admitted that, according to his Diabetic Record Sheet, his blood was checked twice a day between June 24, 2008, and June 30, 2008. (*Id*. at 9, p. 26.) Ortiz further stated that he was allowed to leave his housing unit during the lockdown to receive medical treatment. Plaintiff additionally admitted that Reitz never told him that she was denying him his medications or low sodium diet and he speculates only that she must have been responsible because she was an important person at the prison. (*Id*. at 10, p. 30-31.) Plaintiff also testified that he could not deny that he had medical appointments and conceded that he was given antibiotics during the course of the lockdown, further undermining his claim that he was not provided with any medication during said period.

Based upon an application of the standards developed in *Estelle* and *Durmer* to the undisputed facts, there are simply no factual allegations by Plaintiff which could support a claim that any medication, special diet, or treatment was denied to Plaintiff during the course of the institutional lockdown for non-medical reasons. In particular, Ortiz has also does not come forward with any evidence which could establish that

13

Nurse Reitz deliberately withheld medication from him or was responsible for any medication related decisions with regard to the Plaintiff.  Simply put, the allegations set forth against Nurse Reitz by the amended complaint when viewed along with the undisputed contradictory institutional medical records, establish that a discernible claim of deliberate indifference has not been set forth.  Plaintiff's vague deposition testimony that his claim against Reitz was based on a belief that she was on of the chief people in charge of the prison for medication further supports a determination that the amended complaint has failed to sufficiently allege involvement by Reitz in any unconstitutional conduct.

Moreover, given the general nature of Plaintiff's claims against Reitz and the prisoner's own deposition testimony , it appears that he may be attempting to establish liability against the Defendant Reitz based upon some supervisory position she held in the prison.[9]  However, there are also no allegations that Plaintiff's constitutional rights were violated as the result of any policy, practice or custom enacted or ratified by Nurse Reitz   Second, there are  no facts presented which could support a claim that Reitz had any personal involvement or acquiescence in any deprivation of medication, diet, or treatment to Ortiz during the period of the lockdown.  Accordingly, under the

---

[9] There are no assertions whatsoever that Reitz had any supervisory capacity with respect to the prison's food services department.

standards announced in *Rode*, any assertions against Reitz based upon some supervisory role she may have had at the prison are insufficient for purposes of establishing § 1983 liability.  Pursuant to the above discussion, the unopposed motion for summary judgment will be granted.

                                                                     s/Sylvia H. Rambo
                                                           United States District Judge

Dated:  March 7, 2012.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALBERT JUAN ORTIZ,** | : | |
| | : | |
| Plaintiff | : | **CIVIL NO. 3:CV-08-2126** |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **PRISON BOARD MEMBERS,** *et al.,* | : | |
| | : | |
| Defendants | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant Lisa Reitz R.N.'s unopposed motion seeking entry of summary judgment (Doc. 58) is **GRANTED**.

2. The clerk of court is **DIRECTED** to **DEFER** the entry of judgment for Defendant Reitz until the close of this case.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: March 7, 2012.